IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN MICHAEL BRAY,                    )
                                      )
                    Petitioner,       )      No. 6:03-cv-1762-HO
                                      )
          v.                          )      FINDINGS & RECOMMENDATION
                                      )
BRIAN BELLEQUE,                       )
                                      )
_____Respondent.    )

    Petitioner brings this proceeding pursuant to 28 U.S.C. § 2254 challenging his convictions related to the murder of Georgia Dutton after a jury trial bifurcated between a guilt and a penalty phase. As the court noted in its previous findings:

> During the guilt phase, the following evidence was introduced.
> The state's witness William Steiner testified that he, petitioner, Dutton and Ed Haffey had been selling drugs together since late 1990. Dutton had moved to Lincoln City due to problems between her and Haffey's methamphetamine cooking partner. Dutton continued to sell drugs with the three men after moving to Lincoln City. According to Steiner, petitioner worried that

Dutton would become an informant and wanted to kill her.
Petitioner shared his concerns with Haffey who eventually
gave his approval to kill Dutton.  Steiner testified that
petitioner wanted Steiner to do the actual killing but
that petitioner wanted to rape and torture Dutton before
the murder.  Steiner stated that he and petitioner went
to Lincoln City on February 29, 1991 with the intention
of killing Dutton.  To ensure that Dutton would go with
petitioner and Steiner, Haffey called her beforehand to
tell her that the two men would pick her up and drive her
to see Haffey.

     Steiner testified that he and petitioner picked up
Dutton as planned, pulled onto a road off the highway and
sexually assaulted Dutton.  Shortly after the sexual
assault, Steiner grabbed Dutton's head and jerked hard,
causing her to become unconscious.  Steiner then held his
arm on Dutton's throat until she stopped breathing.
Then, he tied her pantyhose around her neck.  Steiner
stated that petitioner watched him strangle Dutton and
told Steiner that he was proud of what Steiner had done.
Steiner and petitioner rolled Dutton's body into garbage
bags and drove back to Salem.  Along the way they threw
Dutton's clothing and jewelry out along the road and
threw Dutton's body off a bridge outside Roseburg.
Haffey and a third witness testified and largely
corroborated Steiner's version of events.

     Petitioner's testimony differed.  Although he
admitted that he was involved in selling drugs with
Steiner, Haffey and Dutton, petitioner stated that
Steiner had a violent side that was exacerbated by drugs
and alcohol.  Petitioner testified that it was his
intention to take Dutton to see Haffey and that he only
turned off the highway when Dutton changed her mind about
wanting to see Haffey and started becoming intimate with
Steiner. Petitioner stated he stopped driving when he saw
Steiner twisting Dutton's neck and tried to resuscitate
her to no avail.  Petitioner stated that after Dutton was
killed, he continued driving towards Salem.  Steiner
threw Dutton's items out along the way, but petitioner
stated he never helped.  Petitioner stated he wanted
Steiner to dump Dutton's body by the bridge beside the
Winchester Store in Roseburg, but Steiner refused.  Thus,
the two continued to another bridge where Steiner threw
Dutton's body into the river.  Petitioner testified he
had nothing to do with Dutton's murder other than being
there and covering it up afterwards.

     At the conclusion of the guilt phase, the jury found
petitioner guilty of two counts of murder, two counts of

aggravated murder and three counts of kidnaping but acquitted him on the rape and sodomy charges. In the penalty phase, the jury declined to impose a death sentence and found that petitioner should not be eligible for parole. At the February 1994 sentencing hearing, the judge merged the murder convictions with the aggravated murder convictions. On the aggravated murder convictions, the judge sentenced petitioner to life in prison without the possibility of parole. On the kidnaping counts, the judge sentenced petitioner to concurrent 110 month prison sentences to be served consecutively to the aggravated murder life sentence.

Amended Findings and Recommendation (#110) at pp. 2-3.

Petitioner initiated these proceedings pro se on December 24, 2003. After appointment of counsel and several extensions of time, petitioner asserted numerous grounds for relief based on alleged denial of due process and alleged ineffective assistance of counsel in an amended petition filed on September 5, 2006. On April 19, 2012, after briefing regarding procedural bars, the court determined that petitioner had failed to exhaust numerous claims and had asserted one claim not cognizable on habeas review. With those claims dismissed, the parties have briefed the remaining grounds for relief: (1) petitioner was denied his right to the effective assistance of counsel in that trial counsel failed to adequately investigate and pursue discovery related to evidence of petitioner's involvement in the Claxter Road drug lab; (2) petitioner was denied due process when the trial court denied defense motions to strike evidence related to the Claxter Road drug lab, and for a mistrial; (3) petitioner was denied his right to the effective assistance of counsel in that trial counsel failed to

3 - FINDINGS AND RECOMMENDATION

adequately investigate the plea deal received by co-defendant William Steiner, and to use that investigation to impeach Steiner's testimony; (4) petitioner was denied his right to the effective assistance of counsel in that trial counsel failed to adequately object to the prosecutor's references to petitioner's alleged sexual misconduct with children; (5) petitioner was denied his right to due process when the trial court allowed the prosecutor to refer to petitioner's alleged sexual misconduct with children; and (6) petitioner was denied his right to the effective assistance of counsel in that trial counsel failed to introduce petitioner's military records during the guilt phase of his trial.[1]

As is often the case with habeas proceedings, the substantial time period between the initial proceedings and the asserted deficiencies in those proceedings permits a skilled advocate to refine the strategy that could have been implemented at trial. However, a court reviewing a criminal trial based on a collateral attack is constrained in its examination by considering the purported deficiencies at the time they occurred rather than with the aid of hindsight. Such is the case in the present petition seeking to review allegedly deficient trial counsel performance nearly 20 years ago. Even with the benefit of hindsight, petitioner's habeas counsel has been refining the attack    up

---

[1]The court reserved judgment as to whether claims 2 and 5 are procedurally defaulted to allow the parties to brief the merits of the related ineffective assistance of counsel claims. Respondent has not addressed the merits of these due process claims.

through supplemental briefing nearly 10 years after the start of these federal habeas proceedings. If this court could substitute its current judgment, the outcome may be different from that of the state courts reviewing this matter on direct appeal and during state post-conviction proceedings. However, that is not this court's role in reviewing a petition pursuant to 28 U.S.C. § 2254. It is with these constraints in mind under which review of the performance of trial counsel is undertaken.

A.   Trial Counsel's Performance Regarding the Claxter Road drug Lab

Petitioner's conviction for aggravated murder necessitated the jury's involvement in the penalty to be imposed. There were three possible outcomes: death; life imprisonment without the possibility of parole; or life imprisonment with the possibility of parol after 30 years. Part of the jury's task involved determining whether defendant could commit criminal acts of violence that would constitute a threat to society.

The prosecution presented evidence of petitioner's past criminal conduct in an effort to demonstrate probable future violent criminal activity. The prosecutor presented evidence of alleged sexual misconduct and evidence pertaining to methamphetamine distribution after the murder of Georgia Dutton.

5 - FINDINGS AND RECOMMENDATION

Among the evidence of methamphetamine distribution was the execution of ten search warrants in Salem, Oregon including at petitioner's residence where officers reportedly discovered a number of handguns, small quantities of methamphetamine, and $3,649 in cash. The evidence also included the search of a disassembled methamphetamine lab in a travel trailer located at a Salem storage facility on Claxter Road. In the trailer, officers discovered a bottle later determined to contain liquid methamphetamine with petitioner's finger prints on it. A large container was also discovered and later determined to hold nearly five gallons of liquid methamphetamine. The prosecution offered testimony that the retail value of the methamphetamine, once dried and cut, would be $1.4 to $2.8 million.

Defense counsel objected to the introduction of the lab reports identifying the liquid methamphetamine and the fingerprints as well as to related testimony. Counsel additionally sought a mistrial.

Petitioner was represented by two counsel, one of whom, James Sussee, had represented petitioner regarding the charges related to the guns and drugs found at petitioner's home. Sussee complained that he was never informed that petitioner had been connected to the Claxter road methamphetamine lab. Petitioner's other attorney, Kenneth Hadley, was also surprised by the evidence. Indeed, the prosecution failed to provide the lab reports because the murder

6 - FINDINGS AND RECOMMENDATION

prosecution occurred in Polk County, Oregon and the searches regarding the methamphetamine distribution occurred in Marion County, Oregon. The Polk County District attorney assumed that the Marion County District Attorney provided the materials to Sussee. In addition, the Marion County drug case had been referred to the U.S. Attorney, apparently due to the substantial quantities involved.

The trial court denied the motions to strike and for mistrial, but did allow the defense additional time for whatever investigation was needed.

The prosecution also presented testimony that petitioner had purchased the trailer for Ed Christopherson, that the trailer had originally been stored on petitioner's property, and that petitioner and Christopherson had used it to cook methamphetamine. This testimony was elicited from Gregory Johnson. Sussee had received a report from a police detective's interview of Johnson and this report referenced that the Claxter road trailer had been originally located on petitioner's property. However, Sussee was not aware of the contents of the trailer or the fingerprint. Sussee did ask the Marion County District Attorney's office about the trailer, but no discovery was provided because petitioner was not charged regarding the alleged drug operation.

The defense renewed its motion for a mistrial and requested, in the alternative, that the death penalty be removed from

consideration.   Hadley noted that he was not able to conduct pretrial analysis of the physical evidence or an independent investigation of petitioner's connection to the alleged Claxter Road drug lab.   The trial court denied the motions and admonished defense counsel for failing to trigger it as an issue in their investigation and preparation for the murder trial given the tremendous expense and exhaustive effort that had gone into discovery.   Nonetheless, the court kept the record open so that the defense could supplement the record on the issue and allowed counsel whatever time they felt they needed to rebut the evidence.

The prosecution also added news articles about the Salem drug investigation, but the articles were not shown to the jury.   After the penalty phase, the jury determined that petitioner was more likely than not to commit further crimes of violence, but declined to impose the death penalty.   In addition, the jury also found that there were insufficient mitigating circumstances to make petitioner eligible for parole.   The court thus sentenced petitioner to life without parole.

Petitioner argues that his trial attorneys were deficient in failing to discover evidence of the Claxter Road drug lab prior to trial.

To prevail on a claim of ineffective assistance of counsel, Petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that the

performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). <u>Chacon v. Wood</u>, 36 F.3d 1459, 1463 (9th Cir. 1994).

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight. <u>Id</u>. at 689-90. Petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. To satisfy the prejudice component, petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694.

Petitioner sought post-conviction relief in the Circuit Court for the State of Oregon, County of Marion asserting trial counsel failed to adequately investigate and advice petitioner concerning investigations and possible offenses imputed to petitioner, particularly the legal ramifications regarding the Claxter Road drug lab. Petitioner also asserted that counsel failed to ask for

9 - FINDINGS AND RECOMMENDATION

additional time to rebut the surprise testimony concerning the drug lab investigation.[2]

The post-conviction trial court determined that petitioner's trial counsel adequately investigated, requested, and pursued discovery and that petitioner failed to prove the evidence of his involvement with the drug lab, which was introduced during the penalty phase, affected the outcome of the case.

Pursuant to the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, § 104, 110 Stat. 1214, 1219 (1996), under section 2254, habeas relief may only be granted

> in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable. Cf. Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) ("The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable."); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000) (same standard of unreasonableness applies under subsections (d)(1) and (d)(2)). Second, section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that this presumption of correctness may be rebutted only by "clear and convincing evidence."

---

[2]Petitioner, in his deposition alluded to another basis for ineffective assistance concerning his decision to reject an alleged generous offer of an eight-year prison term in exchange for a guilty plea to murder, but did not allege such claim in his petition in the state post-conviction trial proceedings. Petitioner does raise the issue in these proceedings.

Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004).

In addition, relief may be granted where the state court's decision is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).[3]

> determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. See Chadwick v. Janecka, 312 F.3d 597, 605-606 (C.A.3 2002); Wright v. Secretary for Dept. of Corrections, 278 F.3d 1245, 1253-1254 (C.A.11 2002); Sellan v. Kuhlman, 261 F.3d 303, 311-312 (C.A.2 2001); Bell v. Jarvis, 236 F.3d 149, 158-162 (C.A.4 2000) (en banc); Harris v. Stovall, 212 F.3d 940, 943, n. 1 (C.A.6 2000); Aycox v. Lytle, 196 F.3d 1174, 1177-1178 (C.A.10 1999); James v. Bowersox, 187 F.3d 866, 869 (C.A.8 1999). And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

Harrington v. Richter, 131 S.Ct. 770, 784 (2011).

Of course counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular

---

[3]To be contrary to federal law, the decision must contradict the governing law set forth in Supreme Court precedent, or provide a different result to an indistinguishable fact pattern. Williams v. Taylor, 529 U.S. 362, 405-06, 413.  To be an unreasonable application, the state court, although identifying the correct governing legal principle, must unreasonably apply the legal principle to the facts of the petitioner's case.  Id. at 413.

investigation unnecessary. Strickland, 466 U.S. 691. But, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id.

Investigation, or lack thereof, impacts all portions of the defense including not just trial itself, but plea negotiations. However, petitioner's assertion that the alleged deficient performance of counsel in investigating the Claxter Road evidence affected his decision to turn down the alleged generous offer from the prosecutor of an eight-year prison term was not exhausted in the state court proceedings. During the state post-conviction trial proceedings, petitioner focused the prejudicial impact at sentencing, not plea negotiations. Petitioner explored the issue on appeal, but the State argued that the post-conviction trial court did not have an opportunity to address the issue. Nonetheless, because the issue was not exhausted based on a failure to present it at the first opportunity, in an abundance of caution, the court will address the merits assuming that such failure also constitutes ineffective assistance of counsel. See Martinez v. Ryan, 132 S.Ct. 1309 (2012) (Where, under state law, ineffective-assistance-of-trial-counsel claims must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims if, in the

initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective).

With respect to whether counsel's performance at the penalty phase of trial was deficient, the state-post convictions court's decision is entitled to deference. The prosecutor did not raise the evidence at issue here during the guilt phase of the trial. Although counsel was caught off-guard by the collateral evidence during the sentencing phase, the trial court permitted whatever time counsel needed to address it. Trial counsel contacted two experts to address the fingerprints and the purported liquid methamphetamine contents of the bottles. Trial counsel determined not to call these witnesses and does not assert in these proceedings that there is any expert testimony to rebut the identification of petitioner through the fingerprints or the nature and quantity of the contents of the bottles found in the lab.

Although petitioner now asserts that he would have also been able to procure evidence that he sold the trailer "well in advance of its discovery by law enforcement," such evidence does not render the state post-conviction court's findings unreasonable. Although the petitioner's counsel did not seek a continuance, they were given whatever time they needed and they did consult experts in an attempt to rebut the evidence. Petitioner fails to establish deficient performance and certainly fails to establish any prejudice resulting from counsel's performance.

13 - FINDINGS AND RECOMMENDATION

Although petitioner asserted that discovering the lab prior to trial would have allowed trial counsel to effectively prove petitioner's lack of connection to the lab through the use of the sale of the trailer evidence,[4] he now asserts that the failure to discover the evidence earlier prevented him from taking the alleged "sweetheart" of a plea offer. Petitioner's assertions of prejudice in this regard are inconsistent. Moreover, petitioner's deposition testimony concerning the alleged plea deal is self-serving and insufficient to establish prejudice. The evidence of the plea offer comes from petitioner during his deposition and in that regard the record shows:

> Q.   I want to make sure I understand what you are saying here.  Are you saying that if you had known the Claxter Road incident would be used against you in the penalty phase, you would have taken the plea bargain that was offered?
>
> A.   That's not what I'm saying, ma'am.  I'm saying I would have seriously considered it a lot more, given it a lot more consideration than what I did because it would have been a serious incident to get charged with $6,000,000 worth of drugs by the federal government at a later date and have the problem of doing a life sentence for drug dealing over supposedly $6,000,000 worth of drugs which is -- you know, well, the $6,000,000 isn't even correct ma'am, but that's what they kept saying at trial.

Deposition of John Bray, (Exhibit 125 attached to (#35) at pp. 12-13.

---

[4]The court fails to see how this refutes petitioner's involvement in the lab given that his fingerprints were found on container containing methamphetamine, but, at a minimum, the state court was not unreasonable in its determination.

14 - FINDINGS AND RECOMMENDATION

But then petitioner launches into why he could have proved that he wasn't involved with the trailer. See id. at pp. 13-14. It is difficult to understand why petitioner who doggedly insisted on his innocence of murder and thus would not take a plea to a very low sentence when facing the death penalty, would have nonetheless accepted a plea if he knew he was possibly facing a separate prosecution in a separate court for a drug charges that might yield a life sentence. This is especially true given that he insisted he was not connected to the Claxter Road drug lab. Moreover, petitioner's deposition does not establish that he would have taken the plea at any rate. The petition for relief on this ground should be denied.


B.  Due Process Regarding the Admission of the Claxter Road Evidence

This claim should now be dismissed due to procedural default given that petitioner has failed to establish the intertwined ineffective assistance of counsel claim.


C.  Trial Counsel's Performance Regarding the Investigation into Co-Defendant William Steiner's Plea Deal

Steiner provided testimony that petitioner first suggested Dutton's murder and that petitioner devised the plan. Steiner


15 - FINDINGS AND RECOMMENDATION

further testified that both he and petitioner raped Dutton and that petitioner watched with approval as Steiner killed her.

Petitioner testified that he only intended to drive Dutton to meet with Edward Haffey, but that on the way, Steiner and Dutton drank, smoked marijuana, and snorted methamphetamine and then became physically intimate. Petitioner testified that during the drive, Steiner instructed him to pull off the highway so that Steiner and Dutton could have sex. Petitioner testified that Steiner than killed Dutton to his surprise.

Given the importance of the credibility of these only two witnesses to the murder, the need to explore any bias was no doubt important. To that end, defense counsel questioned Steiner regarding his plea deal. Steiner testified that in exchange for his testimony, the prosecution took the death penalty off the table and offered a life sentence with the possibility of parole after 30 years. Defense counsel also elicited the fact that the prosecution also offered to notify the parole board, which had authority to override the 30-year minimum and reduce it to 20 years, of Steiner's cooperation.

After sentencing, counsel obtained a letter from Steiner's attorney, Karen Gable, in which she represented to Steiner, six months prior to petitioner's trial, that his refusal to honor the agreement to testify would relieve the state from its obligations including the condition it not seek the death penalty. Although

16 - FINDINGS AND RECOMMENDATION

this letter was not discovered pre-trial, defense counsel did elicit an admission from Steiner that he had to testify to avoid the death penalty after he initially stated he could refuse to testify.

Petitioner argued before the state post-conviction court that his counsel was deficient for failing to fully investigate the plea deal and obtain the Gable letter to use as impeachment of Steiner's testimony. Petitioner argues that letter demonstrates powerful incentive to testify consistent with his previous statement to law enforcement prior to the trial.

The state post-conviction court determined that petitioner failed to prove counsel did not investigate all plea negotiations or that there was any investigation counsel failed to perform which would have affected the outcome of the trial. Finally, the court found that counsel adequately cross-examined Steiner.

It is not clear if attorney-client privilege would have prevented disclosure of the letter, but the state post-conviction court's findings were reasonable even assuming the letter was discoverable. Counsel's decision to rely on cross-examination to impeach Steiner's testimony as opposed to seeking possible attorney-client materials is not an unreasonable tactical decision. Moreover, the contents of the letter reveals nothing different than what was elicited during cross-examination. The petition for relief on this ground should be denied.

D.   Trial   Counsel's   Performance   Regarding   Treatment   of   the
Prosecutor's References to Alleged Sexual Misconduct with Children

During the guilt phase of the trial, the prosecutor questioned
Steiner, who was 16 when he met petitioner, about petitioner's
prior sexual contacts.   The prosecutor elicited from Steiner that
petitioner suggested they have sex, make pornographic movies and
that they did have sex.   Steiner also testified that he was friends
with petitioner because petitioner supplied him with food and
drugs.   Steiner testified that he had sex with both petitioner and
his wife and that petitioner wanted Steiner to have sex with his
daughter and watch.   Steiner also suggested that he was raped by
petitioner when he was drunk and passed out.   Steiner further
testified that petitioner solicited prostitutes as young as 17.

Steiner also testified that he saw petitioner around town with
other kids around the age of 16 or 17.   When the prosecutor queried
about Steiner's suspicions of what petitioner was doing with those
kids, petitioner's counsel objected and the court sustained the
objections.

When the prosecutor questioned Steiner about sex as a
condition of living with petitioner and how often they had sex,
defense counsel objected arguing the testimony was not relevant.
The trial court overruled the objection.

Petitioner testified that Steiner was like a son to him, but
that he started having sex with him when he was possibly 17, but

maybe 18. Petitioner also testified as to other kids who stayed at his house. He took in a girl who was younger than 15 and later took in her brother who was about the same age. Petitioner also took in a 14 year old boy who was his nephew. The prosecutor elicited that petitioner's nephew stayed for a few years but was, at the time of petitioner's trial, serving 20 years for sodomy. Petitioner also testified as to an unspecified number of other kids who stayed for two or three days at a time. No testimony regarding any sexual contact with children other than Steiner was elicited.

After the prosecutor finished his examination of petitioner, counsel made objections, outside the presence of the jury, about the implication that petitioner was having sex with the other children he allowed into his home, but he didn't object at the time so as not to highlight it for the jury. Counsel further stated that he might seek a mistrial if the prosecutor makes the same references during argument.

Petitioner argued to the post-conviction court that counsel was deficient for failing to object and move for a mistrial in response to the prosecutor's questions concerning sexual misconduct with children. The court noted that defense counsel did object to certain testimony and determined that counsel was not inadequate for not seeking a mistrial given that the objection was denied.

Petitioner argues that counsel was deficient for failing to push the sexual misconduct objections harder. Petitioner further

contends that the evidence was inadmissible Or. R. Ev. 404(3)
evidence.[5]    Petitioner contends that there is a reasonable
probability that the jury would have acquitted him on some or all
charges had counsel acted more forcefully in objecting to the
testimony regarding sexual misconduct.

The state post-conviction court's determination is entitled to
deference.  Though more forceful objections were not made, counsel
did object to the relevance of the sexual conduct with Steiner and
that objection was denied.  The tactical decision not to further
highlight the testimony for the jury through additional objections
was reasonable.  The tactical decision not to object in front of
the jury regarding the implication of sexual conduct with other
kids was reasonable.  In addition, the prosecutor did not actually
refer to any sexual contact between petitioner and the other
children he had in his home.

The evidence regarding sexual contact with Steiner could
reasonably be viewed as relevant to Steiner's motive and plan with
respect to Steiner's role in the murder and his desire to go along
with petitioner's alleged plan.[6]  Moreover, it is not unreasonable

---

[5]Oregon's Rule 404(3) is similar to Fed. R. Civ. P. 404(b).

[6]As noted, Steiner testified that he received food, shelter and
drugs from petitioner and that sex was a condition of living with
petitioner.  It could be argued that Steiner felt compelled to go
along with Petitioner's plan for murder in order to continue to
receive these benefits and the sexual misconduct testimony could
demonstrate Steiner's belief that he had strong incentive to maintain
(continued...)

to determine that the relevance of the testimony outweighed any prejudice.  Therefore, counsel was not deficient for failing to object to the evidence as inadmissable under Or. R. Ev. 404(3). The petition for relief on this ground should be denied.

E.    Due Process Regarding the Admission of the Alleged Sexual Misconduct with Children

This claim should now be dismissed due to procedural default given that petitioner has failed to establish the intertwined ineffective assistance of counsel claim.

F.    Trial Counsel's Performance Regarding Petitioner's Military Records

As noted above, Steiner testified that while he carried out the murder, it was petitioner who planned it.  Steiner testified that he feared for his life if he did not comply with petitioner's plan and noted that petitioner had told him he had killed 240 people in Vietnam.

Petitioner denied making the assertions attributed to him by Steiner and testified to his extensive training in the army including Army Officer Military Leadership School, Army Officer Engineering Tactical School, Army Officer Landmine Warfare School,

_____

[6](...continued)
those benefits.

Army Officer Chemical Warfare School, as well as graduating from Army Officer Candidate School. Petitioner also testified to his training regarding disposal of bodies and how to hide them. Petitioner denied ever killing anyone, but stated he did receive two medals for saving lives. Petitioner further testified that he was surprised and shocked by Steiner's murder of Dutton and therefore had no plan for disposal of the body. The prosecutor elicited testimony from petitioner that since Vietnam, he had problems with dead bodies.

Petitioner argues that defense counsel was deficient for not introducing his military records to bolster petitioner's testimony and notes that the prosecutor argued at closing that if petitioner had such military experience where are the records? Defense counsel did introduce the records during the penalty phase of the trial.

The military records were not introduced during the post-conviction proceedings. The state post-conviction court determined that counsel was not ineffective for failing to introduce the records during the guilt phase and determined that petitioner failed to show that the records would have made a difference during the guilt phase.

Trial counsel did try to prevent Steiner's testimony regarding his knowledge of petitioner's military background. The trial court

determined that Steiner's testimony was not offered for the truth of the matter, but was offered to show his state of mind.

Defense counsel argued to the trial court that the prosecutor's references to the lack of military records in closing was improper. During the post-conviction proceedings, defense counsel noted that he felt there would be objection to the introduction of the records during the guilt phase given that Steiner's testimony was only allowed for state of mind and not the truth of the matter asserted.

Counsel's tactical decision not to introduce the records as impeachment of Steiner's testimony was reasonable. The prosecutor did not attack the credibility of petitioner's testimony regarding the military records during cross-examination--that tactic was employed during closing and counsel then objected.

Moreover, petitioner's failure to introduce the records during the post-conviction proceedings demonstrates why that court's decision is entitled to deference as to prejudice because petitioner did not provide it an opportunity to assess the prejudice. Indeed, it is still unclear if the records corroborate petitioner's testimony. Even after all this time, petitioner

merely argues that his records were "favorable."[7]  The petition for relief on this ground should be denied.

CONCLUSION

For the reasons stated above, the petition for relief pursuant to 28 U.S.C. § 2254 should be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of

---

[7]Petitioner contends that the post-conviction court had a transcript of testimony from an expert who had reviewed petitioner's military record, but does not direct this court to the records themselves.  The testimony appears to confirm the schooling and a rescue.  It does not confirm the disposal of bodies and does not contradict Steiner's testimony.  The testimony, however, also refers to disciplinary matters and court martials.  The testimony does not demonstrate that the post-conviction court's decision is not entitled to deference.

24 - FINDINGS AND RECOMMENDATION

a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

## CERTIFICATE OF APPEALABILITY

Should the district court adopt this recommendation, the court should further certify that the petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2) and that this cause is not appropriate for appellate review.

DATED this _____19t_____ day of September, 2013.


_____
THOMAS M. COFFIN
United States Magistrate Judge

25 - FINDINGS AND RECOMMENDATION